Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 866-219-3343
F: 866-219-8344

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429
F: 866-219-8344

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORIO LARDIZABAL,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICAN EXPRESS NATIONAL BANK, ARVEST BANK, BANK OF AMERICA, N.A., BARCLAYS BANK DELAWARE, CITIBANK, N.A., SYNCHRONY BANK, EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., INNOVIS DATA SOLUTIONS, INC., TRANS UNION, LLC,<br><br>    Defendants. | Case No.: **'22CV345 MMAKSC**<br><br>COMPLAINT FOR VIOLATIONS OF THE:<br><br>(I) FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681 ET SEQ.<br><br>(II) CONSUMER CREDIT REPORTING AGENCIES ACT, CAL. CIV. CODE § 1785 ET SEQ.<br><br>(III) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>JURY TRIAL DEMANDED |

1

Complaint

**INTRODUCTION**

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. As such, Congress enacted the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq, to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. The California legislature also determined that accurate credit reporting is vital and enacted the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

3. Gregorio Lardizabal ("Plaintiff") brings this action to challenge the conduct of American Express National Bank ("AMEX"), Arvest Bank ("Arvest"), Bank Of America, N.A. ("BANA"), Barclays Bank Delaware ("Barclays"), Citibank, N.A. ("Citibank"), Synchrony Bank ("Synchrony"), collectively referred to as "furnishers", and Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Innovis Data Solutions, Inc. ("Innovis"), Trans Union, LLC ("Trans Union"), collectively referred to as "Defendants" with regard to continued misrepresentations of Plaintiff's personal liability for inaccurate debts.

4. Plaintiff makes these allegations based on personal knowledge and investigation conducted by Plaintiff's attorneys.

Complaint

5. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

6. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violations.

7. Unless otherwise indicated, the use of a Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named.

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 28 U.S.C. § 1367 for supplemental state claims.

9. The action arises out of Defendants' violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1 et seq.

10. Because Defendants conduct business in the State of California, personal jurisdiction is established.

11. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides within this judicial district, (ii) the conduct complained of herein occurred within this judicial district and (iii) Defendants conducted business within this judicial district at all times relevant.

## PARTIES & DEFINITIONS

12. Plaintiff is a natural person that resides in San Diego County and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and Cal. Civ. Code § 1785.3 (b).

13. AMEX is a bank headquartered in Utah that conducts business in San Diego County. AMEX is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in

|   |   |
|---|---|
| 1 | consumer reports.  AMEX also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2. |

14. Arvest is a bank headquartered in Arkansas that conducts business in San Diego County.  Arvest is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports.  Arvest also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2.

15. BANA is a bank headquartered in North Carolina that conducts business in San Diego County.  BANA is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports.  BANA also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2.

16. Barclays is a bank headquartered in Delaware that conducts business in San Diego County.  Barclays is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports.  Barclays also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2.

17. Citibank is a bank headquartered in New York that conducts business in San Diego County.  Citibank is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion

Complaint

in consumer reports. Citibank also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2.

18. Synchrony is a bank headquartered in Utah that conducts business in San Diego County. Synchrony is a furnisher of information under 12 CFR § 1022.41(c) because it regularly, and in the ordinary course of business, furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in consumer reports. Synchrony also furnishes information to consumer reporting agencies about consumer transactions or experiences with consumers like Plaintiff and is bound by U.S.C. 1681s-2.

19. Equifax is a LLC headquartered in Georgia that does business in San Diego County. It is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

20. Experian is a corporation headquartered in California that does business in San Diego County. It is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

21. Innovis is a corporation headquartered in Ohio that does business in San Diego County. It is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

22. Trans Union is a LLC headquartered in Illinois that does business in San Diego County. It is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

23. Defendants are "person[s]" as defined by 15 U.S.C. § 1681a(b) and Cal. Civ. Code § 1785.3(j).

24. The causes of action herein pertain to Plaintiff's "consumer report[s]" under 15 U.S. Code § 1681a(d) and Plaintiff's "consumer credit report[s]" under Cal. Civ. Code § 1785.3(c), in that inaccurate representations of Plaintiff's credit worthiness, credit standing and credit capacity were made via written, oral, or other communications of information by consumer credit reporting agencies, which was used or expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among

other things, credit to be used primarily for personal, family, household and employment purposes.

**FACTUAL ALLEGATIONS**

25. Plaintiff is the owner of several real properties and was interested in refinancing one or more of those properties to take advantage of market conditions.

26. Plaintiff was excited to liquidate some of his equity and use it to purchase additional property, and lower Plaintiff's current mortgage interest rates.

27. However, Plaintiff was disappointed when lenders consistently denied Plaintiff's applications citing Plaintiff's credit. Plaintiff was shocked to discover several inaccuracies on his credit reports causing his refinancing applications to be denied.

28. The inaccuracies on Plaintiff's credit reports ultimately caused Plaintiff to forego the purchase of an investment property, Plaintiff was unable to lower interest rates on Plaintiff's current mortgages, and when Plaintiff did purchase a property Plaintiff was forced to take out two high interest loans.

29. On or around November 20, 2021, Plaintiff requested his Equifax and Trans Union consumer reports. To Plaintiff's shock and disappointment, Plaintiff discovered several inaccuracies including incorrect names and tradelines that do not belong to Plaintiff.

30. Specifically, on Plaintiff's Equifax report, AMEX, BANA, Barclays, Citibank, and Synchrony furnished information not related to Plaintiff and the report included Plaintiff's son's name.

31. Similarly, on Plaintiff's Trans Union report, AMEX, BANA, Barclays, and Synchrony furnished information not related to Plaintiff and the report included Plaintiff's son's name.

32. On or around December 13, 2021, Plaintiff mailed written dispute communications to Equifax and Trans Union, pursuant to 15 U.S.C. § 1681i(a).

///

33. Plaintiff's disputes contained sufficient identifying information for Equifax, Trans Union, AMEX, BANA, Barclays, Citibank, and Synchrony to locate Plaintiff's alleged accounts. Such identifying information included Plaintiff's name, date of birth, phone number, last four digits of Plaintiff's social security number, California driver's license number, address, credit report file number, the disputed names, and the disputed tradelines with partial account numbers as they appeared on Plaintiff's Equifax and Trans Union consumer reports. Plaintiff also signed the disputes and attached a copy of Plaintiff's California driver's license.

34. Plaintiff's written Equifax and Trans Union disputes explained that the information AMEX, BANA, Barclays, Citibank, and Synchrony furnished was inaccurate because the accounts were not his. Plaintiff's son's name appeared on Plaintiff's reports leading Plaintiff believe a possible mixed file issue occurred, but regardless of that fact, Plaintiff explained he did not open accounts with the Furnishers so the tradelines were inaccurate as they do not belong to Plaintiff. Plaintiff requested removal of the Furnishers' tradelines from Plaintiff's consumer reports.

35. Upon information and belief, Equifax timely notified AMEX, BANA, Barclays, Citibank and Synchrony of Plaintiff's disputes and included the documents provided therewithin.

36. Upon information and belief, Trans Union timely notified AMEX, BANA, Barclays, and Synchrony of Plaintiff's dispute and included the documents provided therewithin.

37. Each Furnisher was required to conduct reasonable reinvestigations into its reporting on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681s-2(b)(1)(A).

///

///

38. Plaintiff's Equifax and Trans Union disputes explicitly established the need to conduct investigations into the AMEX, BANA, Barclays, Citibank and Synchrony tradelines.
39. On January 13, 2022, Trans Union mailed Plaintiff and acknowledgement of the dispute but did not provide dispute results.
40. To date, Equifax and Trans Union have not responded with results as to Plaintiff's December 13, 2021, written dispute communications and through this conduct have violated 15 U.S.C. § 1681i(a)(6).
41. On or around December 7, 2021, Plaintiff accessed Plaintiff's Experian consumer report. Plaintiff was distraught to discover an incorrect social security number and Plaintiff's son's name on Plaintiff's report. Moreover, Plaintiff was astounded to see AMEX, BANA, Barclays, and Synchrony reported information not related to Plaintiff.
42. On or around December 20, 2022, Plaintiff mailed written dispute communications to Experian pursuant to 15 U.S.C. § 1681i(a).
43. Plaintiff's Experian dispute contained sufficient identifying information for Experian, AMEX, BANA, Barclays, and Synchrony to locate Plaintiff's alleged accounts. Such identifying information included Plaintiff's name, date of birth, phone number, last four digits of Plaintiff's social security number, California driver's license number, address, credit report file number, the disputed names, the disputed social security numbers, and the disputed tradelines with partial account numbers as they appeared on Plaintiff's Experian consumer report. Plaintiff also signed the dispute and attached a copy of Plaintiff's California driver's license.
44. Plaintiff's written Experian dispute specifically explained that Plaintiff believed the furnishers' information was inaccurate because Plaintiff's son's name and an unknown social security number appeared on Plaintiff's report, leading Plaintiff to reasonably believe a possible mixed file issue occurred. But regardless of that

fact, Plaintiff explained the tradelines were inaccurate since Plaintiff did not have accounts with the furnishers and therefore the tradelines did not belong to Plaintiff. Plaintiff requested removal of the furnishers' tradelines from Plaintiff's consumer reports.

45. Upon information and belief, Experian timely notified AMEX, BANA, Barclays, and Synchrony of Plaintiff's disputes and included the documents provided therewithin as required by the FCRA.

46. Plaintiff's Experian dispute explicitly established the need to conduct investigations into the AMEX, BANA, Barclays, and Synchrony tradelines.

47. Upon further review of Plaintiff's consumer reports, Plaintiff was shocked and appalled to discover that furnisher Arvest reported Plaintiff was thirty-days late on a payment in October 2020 to Equifax and Trans Union, even though Plaintiff made all payments on time. Plaintiff admittedly has an account with Arvest, but he has never been late on it.

48. On December 22, 2021, Plaintiff accessed Plaintiff's Innovis consumer report and was shocked to see BANA and Arvest furnishing inaccurate information.

49. On or around January 7, 2022, Plaintiff mailed written dispute communications to Equifax, Innovis, and Trans Union pursuant to 15 U.S.C. § 1681i(a).

50. Plaintiff's written disputes contained sufficient identifying information for Equifax, Innovis, Trans Union and Arvest to locate Plaintiff's disputed tradelines. Plaintiff's dispute also contained sufficient identifying information for Innovis and BANA to locate the tradeline purported to belong to Plaintiff.

51. Such identifying information included Plaintiff's name, date of birth, phone number, last four digits of Plaintiff's social security number, California driver's license number, address, credit report file number, and the disputed tradelines with partial account numbers as they appeared on Plaintiff's Equifax, Innovis, and Trans Union consumer reports. Plaintiff also signed the disputes and attached a copy of Plaintiff's California driver's license.

52. Plaintiff's written Equifax, Innovis, and Trans Union disputes regarding the Arvest tradeline included copies of Plaintiff's payments that were posted to Plaintiff's bank account. Plaintiff's disputes explained that the payments demonstrated Plaintiff paid on time and that Arvest received Plaintiff's payments during the period Arvest reported Plaintiff failed to pay or was late. Plaintiff requested the Arvest tradeline to report Plaintiff as current on all payments.

53. Plaintiff's Innovis dispute further explained that Plaintiff did not have a credit card or loan with BANA so the tradeline could not belong to Plaintiff and therefore was inaccurate. Plaintiff requested removal of the BANA tradeline from Plaintiff's Innovis consumer report.

54. After careful review of Plaintiff's Experian report DATED December 7, 2021, Plaintiff was shocked to discover Arvest reporting an October 2020 payment as thirty-days late even though Plaintiff made all payments on time.

55. On or around January 13, 2022, Plaintiff again mailed a written dispute communication to Experian disputing the Arvest tradeline pursuant to 15 U.S.C. § 1681i(a).

56. Plaintiff's written dispute contained sufficient identifying information for Experian and Arvest to locate Plaintiff's disputed tradeline.

57. Such identifying information included Plaintiff's name, date of birth, phone number, last four digits of Plaintiff's social security number, California driver's license number, address, credit report file number, and the disputed tradelines with partial account numbers as they appeared on Plaintiff's Experian consumer report.

58. Plaintiff also signed the dispute, attached a copy of Plaintiff's California driver's license, and included copies of Plaintiff's Arvest payments that were posted to Plaintiff's bank account. Plaintiff's dispute explained that the payments demonstrated Plaintiff paid on time and that Arvest received Plaintiff's payments

Complaint

1  during the period Arvest reported Plaintiff was thirty-days late. Plaintiff
2  requested the Arvest tradeline to report Plaintiff as current on all payments.

3  59. On January 14, 2022, Experian responded to Plaintiff's December 20, 2022
4  dispute. Experian verified the disputed AMEX, BANA, Barclays, and Synchrony
5  tradelines as accurate despite receipt of information in Plaintiff's disputes that
6  would cause a reasonable person to have substantial doubts about the accuracy
7  of the information on Plaintiff's Experian report

8  60. On February 4, 2022, Trans Union responded to Plaintiff's January 7, 2022,
9  dispute letter and verified the Arvest tradeline as accurate.

10 61. To date, Equifax and Innovis have not responded to Plaintiff's January 7, 2022,
11 written dispute communications and through this conduct have violated 15
12 U.S.C. § 1681i(a)(6).

13 62. On February 8, 2022, Experian responded to Plaintiff's January 13, 2022 dispute
14 and verified the Arvest tradeline as accurate.

15 63. Equifax, Experian, Innovis and Trans Union were required to conduct reasonable
16 reinvestigations into the specific tradelines on Plaintiff's consumer reports under
17 15 U.S.C. § 1681i.

18 64. Equifax, Experian, Innovis, and Trans Union did not provide notice to Plaintiff
19 that Plaintiff's dispute was "frivolous or irrelevant" under 15 U.S.C. §
20 1681i(a)(3).

21 65. The Furnishers failed to review all relevant information provided by Plaintiff in
22 Plaintiff's written disputes as required by 15 U.S.C. § 1681s-2(b)(1)(B).

23 66. As a result of faulty investigations, the Furnishers failed to report accurate results
24 to the consumer reporting agencies in violation of 15 U.S.C. § 1681s-2(b)(1)(D).

25 67. Due to the failure to conduct reasonable reinvestigations, Defendants failed to
26 correct and update Plaintiff's information as required by 15 U.S.C. § 1681s-
27 2(b)(1)(E).

28

Complaint

68. Despite receipt of exculpatory information regarding inaccurate and misleading information on Plaintiff's consumer reports, Defendants verified the inaccurate information and credit reporting.
69. Through this conduct, each Furnisher violated Cal. Civ. Code § 1785.25(a) of the CCRAA by furnishing information to consumer reporting agencies that the Furnishers knew or should have known was inaccurate.
70. The Furnishers' reinvestigations, if any, were completely and totally ineffective and unreasonable.
71. Plaintiff's disputes provided Defendants with at least thirty days of notice prior to filing this action.
72. To date, the inaccurate information remains on Plaintiff's credit reports and the Furnishers continue to report negative information related to the tradelines every thirty days.
73. Plaintiff's continued efforts to correct Defendants' erroneous and negative credit reporting were fruitless.
74. Defendants' continued inaccurate and negative reporting on Plaintiff's consumer reports, in light of Defendants' knowledge of the actual errors, was willful or at a minimum, was reckless.
75. Accordingly, Defendants willfully failed to comply with Defendants' duties to reasonably investigate Plaintiff's disputes.
76. Plaintiff has spent countless hours attempting to correct and deal with the inaccurate information and provided all information required for the reinvestigations.
77. While Plaintiff was thorough in Plaintiff's disputes, Defendants failed to consider any of the specific information identified and included in Plaintiff's disputes.
78. Defendants' inaccurate reporting has resulted in significant economic and emotional harm to Plaintiff.

Complaint

79. Due to Defendants' conduct, Plaintiff was unable to refinance several investment properties Plaintiff owns leaving Plaintiff unable to access equity and ultimately Plaintiff was forced to forego purchasing more property.

80. Defendants' conduct caused Plaintiff to lose out on opportunities to lower Plaintiff's interest rates on current mortgages. Defendants' conduct caused Plaintiff to take out two high interest loans to purchase a single property.

81. Defendants' inaccurate reporting caused Plaintiff's credit score to decrease substantially and mischaracterized Plaintiff as a person who avoids financial obligations. To this day, lenders refuse to approve Plaintiff for refinancing options citing Plaintiff's credit score and creditworthiness.

82. As a result of Defendants' willful action and inaction, Plaintiff suffers from anxiety, frustration, stress, lack of sleep, nervousness, and embarrassment because of the lost financial opportunities the inaccurate information caused.

83. As a direct and proximate result of Defendants' willful action and inaction, Plaintiff has suffered damages, including but not limited to, loss of opportunities to refinance, access equity, purchase additional properties, lower interest rates. Defendants actions caused Plaintiff to be subject to high interest loans in order to purchase additional property, decreased Plaintiff's credit score and worthiness, caused wasted time spent reviewing consumer reports, preparing, and mailing dispute letters, attorney fees, loss of credit and potential credit, mental and emotional distress, anguish, humiliation, and embarrassment associated with the loss of financial opportunities as a result of the inaccurate reporting.

84. Since Plaintiff's disputes efforts to resolve the issues were unsuccessful, Plaintiff was forced to bring this action to seek relief.

85. Based upon the facts above, Plaintiff contends that punitive damages are appropriate here.

///

///

Complaint

# CAUSES OF ACTION

## COUNT I

## THE FAIR CREDIT REPORTING ACT

## 15 U.S.C. § 1681 ET SEQ.

## [AGAINST ALL DEFENDANTS]

86. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

87. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA.

88. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1) and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each Defendant.

89. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages and statutory damages of $1,000 for each violation, including each entry and each month of reporting, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

## COUNT II

## THE CONSUMER CREDIT REPORTING AGENCIES ACT

## CAL. CIV. CODE § 1785.1, ET SEQ.

## [AGAINST AMEX, ARVEST, BANA, BARCLAYS, CITIBANK, AND SYNCHRONY]

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

91. The foregoing acts and omissions constitute numerous and multiple violations of the California Consumer Credit Reporting Agencies Act.

Complaint

92. In the regular course of its business operations, AMEX, Arvest, BANA, Barclays, Citibank, and Synchrony (collectively "Furnishers") routinely furnishes information to credit reporting agencies pertaining to transactions between the Furnishers and its consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

93. The Furnishers are, and always were, obligated to not furnish information on specific transactions or experiences to any consumer credit reporting agency if they knew or should have known that the information was incomplete or inaccurate, as required by Cal. Civ. Code § 1785.25(a).

94. Since the Furnishers received all information and documents required to determine the inaccuracy of their furnishings, they should have known to update the information.

95. The Furnishers should have determined that their reporting was inaccurate through review of their own account notes and records and because of the information provided with Plaintiff's disputes.

96. As a result of each and every willful violation of the CCRAA, Plaintiff is entitled to actual damages, punitive damages and statutory damages of $5,000 for each violation and against each Furnisher, including each entry and each month of reporting, and reasonable attorney fees and costs pursuant to Cal. Civ. Code § 1785.31.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## [AGAINST ALL DEFENDANTS]

97. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

98. The conduct and policies on the part of Defendants described herein above was outrageous in that despite receipt of exculpatory information, establishing Defendants knew or should have known the information Defendants are reporting

Complaint

is inaccurate, Defendant's continue to report inaccurate information for no other purpose other than to cause Plaintiff emotional distress.

99. All such conduct by Defendants, is reckless, consciously indifferent to Plaintiff's rights, and intended to cause Plaintiff severe emotional distress and mental anguish.

100. As a direct result, Plaintiff did in fact suffer severe emotional distress and mental anguish including but not limited to anger, frustration, anxiety, embarrassment, and loss of sleep. As a direct result of Defendants' conduct, Plaintiff is often left wondering "why me?"

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered against each Defendant for:

- FCRA - An award of actual damages, in an amount to be determined at trial against all Defendants for each incident of willful noncompliance of the FCRA pursuant to 15 U.S.C. § 1681n(a)(1)(A);
- FCRA - An award of $1,000 statutory damages for each incident of willful noncompliance of the FCRA against all Defendants pursuant to 15 U.S.C. § 1681n(a)(1)(A);
- FCRA - An award of punitive damages, as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2), against all Defendants for each incident of willful noncompliance to the FCRA;
- FCRA - An award of actual damages in an amount to be determined at trial pursuant to 15 U.S.C. § 1681o(a)(1) against all Defendants for each incident of negligent noncompliance of the FCRA;
- FCRA - An award for costs and reasonable attorney fees, pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(2) against all Defendants for each incident of noncompliance of the FCRA;
- CCRAA - An award of any actual damages, in an amount to be determined at trial, pursuant to Cal. Civ. Code § 1785.31(a)(1)&(2) against AMEX, Arvest,

BANA, Barclays, Citibank, and Synchrony;

- CCRAA - An award of statutory damages of $5,000 per willful violation of Cal. Civ. Code § 1785.25(a) pursuant to Cal. Civ. Code § 1785.31(a)(2)(B) against AMEX, Arvest, BANA, Barclays, Citibank, and Synchrony;
- CCRAA - Award of attorney fees and costs pursuant to Cal. Civ. Code § 1785.31(a)(1) and Cal. Civ. Code § 1785.31(d) against AMEX, Arvest, BANA, Barclays, Citibank, and Synchrony;
- IIED - Actual damages according to proof and in an amount to be determined at trial against all Defendants;
- IIED - Special and economic damages according to proof and in an amount to be determined at trial against all Defendants;
- IIED – General damages according to proof and in an amount to be determined at trial against all Defendants;
- IIED – Punitive damages according to proof against all Defendants;
- For equitable and injunctive relief;
- Any other relief the Court deems just and proper.

Date: March 14, 2022                                                        SWIGART LAW GROUP, APC

By: *s/ Joshua B. Swigart*
Joshua B. Swigart, Esq.
Josh@SwigartLawGroup.com

Attorney for Plaintiff

Complaint