1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22

| | |
|---|---|
| GREGORIO LARDIZABAL, | Case No.: 22-cv-345-MMA (BLM) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| AMERICAN EXPRESS NATIONAL BANK, et al., | |
| Defendants. | [Doc. No. 143] |

23
24
25
26
27
28

Pending before the Court is Plaintiff Gregorio Lardizabal's ("Plaintiff") Motion for Attorneys' Fees and Costs against Defendant Arvest Central Mortgage Company ("Arvest"). Doc. No. 143. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 157. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Plaintiff's motion.

# I. Relevant Background

In April 2015, Plaintiff and his wife took out a mortgage from Arvest on their investment property.  Doc. Nos. 143-2 ¶ 5; 145-1 ¶ 6.  Five years later, in April 2020, Plaintiff contacted Arvest regarding possible hardship options available to him.  Doc. No. 145-1 ¶ 7.  Plaintiff then entered into a forbearance agreement with Arvest.  Doc. Nos. 143-2 ¶ 7; 145-1 ¶ 8.  Although Plaintiff timely made all payments on the property, Doc. No. 143-2 ¶ 6, the crux of Plaintiff's complaint against Arvest is that it inaccurately reported to credit agencies that Plaintiff was thirty-days late on his October 2020 payment, Doc. No. 1 ¶ 47.

On March 14, 2022, Plaintiff initiated this action alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1, *et seq.*, and intentional infliction of emotional distress, against Arvest and nine other defendants, including American Express National Bank, Bank of America, N.A., Barclays Bank Delaware, Citibank, N.A., Synchrony Bank, Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., and Trans Union, LLC.  Doc. No. 1.  Between April 5, 2022 and June 6, 2022, all defendants filed an answer to Plaintiff's complaint, with Bank of America, N.A., filing a motion to dismiss.  Doc. Nos. 16, 28, 31, 34, 36, 43, 52, 60–61.

On May 16, 2022, Plaintiff and all defendants attended a court-ordered Early Neutral Evaluation ("ENE") conference before U.S. Magistrate Judge Barbara L. Major, which did not resolve the case.  Doc. No. 49.  Following the ENE and with leave of Court, Plaintiff later filed a First Amended Complaint ("FAC") alleging only violations of the FCRA and CCRAA against seven of the defendants, including Arvest, American Express National Bank, Bank of America, N.A., Equifax Information Services, LLC, Experian Information Solutions, Inc., Innovis Data Solutions, Inc., and Trans Union,

LLC.  Doc. Nos. 70; 72.[1]  All remaining defendants, including Arvest, filed answers to Plaintiff's FAC between August 5, 2022 and August 19, 2022.  Doc. Nos. 76–80, 82, 84.

On August 12, 2022, Plaintiff and the seven remaining defendants attended a second ENE before Judge Major.  Doc. No. 81.  Because the case again did not resolve, the case proceeded through discovery.  *Id.*; Doc. No. 85.  On October 10, 2022 and October 13, 2022, Plaintiff filed notices of settlement for all of the remaining defendants, except Arvest.[2]  Doc. Nos. 90–93, 95–96.

From October 2022 to February 2023, Plaintiff and Arvest duked it out in discovery, which included Plaintiff filing two separate motions to resolve various discovery disputes.  Doc. Nos. 101; 127.  Judge Major granted in part Plaintiff's first motion, which sought for Arvest to supplement some of its responses to two of Plaintiff's Requests for Production, and granted Plaintiff's second motion in full, requiring Arvest to produce two of its employees for depositions.  Doc. Nos. 108; 138.

On March 9, 2023, Plaintiff and Arvest attended a Mandatory Settlement Conference ("MSC") before Judge Major.  Doc. No. 139.  The case did not settle.  *Id.*  However, soon after, on March 13, 2023, Plaintiff filed a notice of acceptance of a Federal Rule of Civil Procedure 68 offer of judgment from Arvest that provided $40,000 in damages, "inclusive of any and all actual, statutory and punitive damages, including any applicable interest," and injunctive relief, where Arvest agreed to "request that the consumer reporting agencies suppress the reporting on Plaintiff's October 2020 payment from Plaintiff's credit reports."  Doc. Nos. 140; 140-1 at 3.  On March 14, 2023, exactly one year from the date Plaintiff filed his initial complaint, the Court entered judgment and closed the case.  Doc. No. 141.

---

[1] On May 16, 2022 and May 25, 2022, the Court granted Joint Motions to Dismiss Defendants Citibank, N.A., and Barclays Bank Delaware.  Doc. Nos. 50; 58.  In addition, the Court granted a Joint Motion to Dismiss Defendant Synchrony Bank shortly after the filing of the FAC.  Doc. No. 75.

[2] The other six defendants were later dismissed after the Court granted the parties' Joint Motions to Dismiss.  Doc. Nos. 103; 110; 112; 115; 123; 133.

Thereafter, on March 28, 2023, Plaintiff filed the instant Motion for Attorneys' Fees and Costs.  Doc. No. 143.  In support of his motion, Plaintiff offered over 450 pages worth of declarations, receipts, discovery from Arvest, and exhibits that included billing records of Plaintiff's four attorneys, Matthew Loker, Joshua Swigart, Daniel Shay, and Spencer Pfeiff.  *See* Doc. Nos. 143-2–143-63.  Arvest filed an opposition,[3] Doc. No. 145, to which Plaintiff replied, Doc. No. 152.  As stated above, the Court found the matter suitable for determination on the papers and without oral argument, and took the matter under submission.  Doc. No. 157.

## II. LEGAL STANDARD

Under the FCRA, a successful party in an action to enforce liability under the statute may recover costs and reasonable attorney's fees.  *See* 15 U.S.C. § 1681n(a)(3) ("In the case of any successful action to enforce any liability under this section, [the court may award] the costs of the action together with reasonable attorney's fees as determined by the court," against "[a]ny person who willfully fails to comply" with the FCRA); 15 U.S.C. § 1681o(a)(2) (same for negligent violations of the FCRA).  The CCRAA similarly provides that "the prevailing plaintiffs in any action commenced under this section shall be entitled to recover court costs and reasonable attorney's fees."  *See* Cal. Civ. Code § 1785.31(d).

When evaluating a motion for reasonable attorneys' fees under the FCRA and CCRAA, the Court undertakes a two-step process.  *Fischer v. SJB–P.D. Inc.*, 214 F.3d

---

[3] After Arvest filed its opposition, Plaintiff filed an *ex parte* motion to seal certain exhibits attached to the opposition which included Plaintiff's confidential information.  Doc. No. 146.  Upon review of the *ex parte* motion, the briefing for the fees motion, and the relevant exhibits, the Court granted Plaintiff's motion to seal while also finding that Plaintiff's own motion included confidential information.  *See* Doc. No. 149.  Accordingly, the Court sealed Document Numbers 143-8, 143-9, 143-10, 145-5, and 145-6, and required the parties to file redacted copies of the above filings on the docket, *see* Doc. Nos. 154–155.  Following this Order, Plaintiff filed an *ex parte* motion to strike certain portions of Arvest's opposition because they contained confidential settlement communications.  Doc. No. 158.  The Court denied Plaintiff's motion to strike and instead directed the Clerk of Court to seal Arvest's entire opposition brief and the declaration of Arvest's attorney, Magdalena D. Kozinska.  Doc. No. 160.  The Court also required Arvest to file a redacted copy of these documents on the docket.  *See* Doc. No. 161.

1115, 1119 (9th Cir. 2000).  First, the Court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate.  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Court "must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citation omitted).  "The reasonable hourly rate is that prevailing in the community for similar work."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975),[4] that were not taken into account in the initial lodestar calculation.  *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (citation omitted).  The *Kerr* factors include, but are not limited to, the time and labor required, the novelty and difficulty of the questions involved, the skill required to perform the legal services properly, the preclusion of other employment by the attorney due to acceptance of the case, whether the fee is fixed or contingent, and the experience, reputation, and ability of the attorneys.  *Kerr*, 526 F.2d at 70.  The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustment upward or downward is "the exception rather than the rule."  *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

///

---

[4] Abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557 (1992).

### III. DISCUSSION

Plaintiff requests a total of $121,574.50 in attorneys' fees and $12,191.13 in litigation costs.[5]  Doc. No. 152 at 14.  Arvest presents two main arguments in its opposition.  First, Arvest argues that Plaintiff is not entitled to fees or costs because its "intent . . . was for the [Rule 68] Offer of Judgment to settle the entire case, attorneys' fees and costs included."  Doc. No. 161-1 at 16.  Second, Arvest argues that even if Plaintiff is entitled to fees, the amount Plaintiff requests is unreasonable.  Doc. No. 161-1 at 17–32.  The Court will first address Arvest's argument regarding the availability of attorneys' fees and costs before analyzing the requests themselves.

**A.   Whether Attorneys' Fees and Costs are Recoverable**

As stated above, the Court first considers whether, having accepted Arvest's Rule[6] 68 Offer, Plaintiff may now seek attorneys' fees and costs in addition to the $40,000 judgment award.

*1.   Rule 68 Standard*

Federal Rule of Civil Procedure 68 provides:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a).  The rule also contains a fee-shifting provision: "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  Fed. R. Civ. P. 68(d).  Thus, plaintiffs must choose carefully when deciding whether to accept or reject a Rule

---

[5] Plaintiff initially requested $114,072.50 in attorneys' fees in his motion, Doc. No. 143-1 at 29, but later revised this number to include additional fees incurred to fully brief this fee petition and to correct several errors in Plaintiff's attorneys' initial time sheet they submitted.

[6] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

68 offer.  *See Marek v. Chesny*, 473 U.S. 1, 10–11 (1985) (noting that a Rule 68 offer "will require plaintiffs to 'think very hard' about whether continued litigation is worthwhile").  Indeed, "the plain purpose of Rule 68 is to encourage settlement and avoid litigation."  *Id.* at 5.

### 2.   Analysis

Plaintiff argues that he is entitled to attorneys' fees and costs because he is the prevailing party under the FCRA and CCRAA, and because Arvest's Rule 68 offer was silent regarding attorneys' fees and costs.  Doc. Nos. 143-1 at 15; 152 at 7, 9.  Arvest responds that "it [wa]s reasonable for Arvest to presume that Plaintiff accepted the $40,000 offer, attorneys' fees and costs included," based on confidential settlement communications[7] between the parties that took place prior to Arvest's offer.  Doc. No. 145 at 16.  Arvest further argues that "for Plaintiff to now claim that he did not know the offer included fees and costs is just another bad faith tactic in pursuing a windfall payout."  *Id.* at 15.

The Ninth Circuit has stated that a Rule 68 offer of judgment "must be clear and unambiguous" in waiving or limiting attorneys' fees and costs.  *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833 (9th Cir. 1997); *Erdman v. Cochise County, Ariz.*, 926 F.2d 877, 880 (9th Cir. 1991); *see also Marek*, 473 U.S. at 6 (1985).  More specifically, "where the underlying statute does not make attorney fees part of costs, [like in the situation here], it is incumbent on the defendant making a Rule 68 offer to *state clearly* that attorney fees are included as part of the total sum for which judgment may be entered if the defendant wishes to avoid exposure to attorney fees in addition to the sum offered plus costs."  *Id.* at 834 (emphasis added); *see F. v. Blue Shield of California*, No. 09-CV-2037-PJH, 2016 WL 1059459, at *14 (N.D. Cal. Mar. 17, 2016) (clarifying that,

---

[7] As stated in the Court's April 28, 2023 Order, the Court will not rely on any of these confidential settlement communications in its decision.  Doc. No. 160 at 2.  And, as explained further in the instant Order, even if the Court were to consider this extrinsic evidence, Arvest was ultimately the maker of its own offer.

according to *Nusom*, "a Rule 68 offer may include the amount for attorney's fees (if this inclusion is expressly stated) or may contemplate that the court will entertain requests for attorney's fees after acceptance."). Therefore, "a Rule 68 offer for judgment in a specific sum together with costs, which is silent as to attorney fees, does not preclude the plaintiff from seeking fees when the underlying statute does not make attorney fees a part of costs." *Nusom*, 122 F.3d at 835. Moreover, "ambiguities in a Rule 68 offer are typically construed against the offeror," with defendants bearing the brunt of uncertainty. *Beauchamp v. Anaheim Union High Sch. Dist.,* 816 F.3d 1216, 1223 (9th Cir. 2016) (citing *Nusom*, 122 F.3d at 834).

Here, of importance, Arvest's Rule 68 offer of judgment to Plaintiff reads:

Judgment shall be entered against Arvest on all claims and in favor of Plaintiff in the amount of $40,000 (forty thousand dollars and no cents), inclusive of any and all actual, statutory and punitive damages, including any applicable interest, as may be awardable under the governing law. In addition, [Arvest] will request that the consumer reporting agencies suppress the reporting on Plaintiff's October 2020 payment from Plaintiff's credit reports.

Doc. No. 140-1 at 3. Thus, on its face, Arvest's offer of judgment is silent as to whether attorneys' fees or costs are included in its offer. Accordingly, Arvest's argument that its "Offer of Judgment included [f]ees and [c]osts," Doc. No. 145 at 13, is unpersuasive. *See Gutierrez v. Good Savior, LLC*, No. CV 14-4595 (AJW), 2016 WL 5661869, at *4 (C.D. Cal. Sept. 28, 2016). In addition, Arvest does not dispute that Plaintiff is the prevailing party or that the FCRA and CCRAA allow for recovery of attorneys' fees upon a successful action to enforce liability under these statutes.

Moreover, Arvest's reliance on *Radecki v. Amoco Oil Co.*, 858 F.2d 397 (8th Cir. 1988), an old out-of-circuit case, is unpersuasive, as a cursory review of the more current case law in this circuit (and elsewhere) reveals the approach the Ninth Circuit takes on this issue. *See Gutierrez*, 2016 WL 5661869, at *6 (finding that "[T]he Eighth Circuit's application [in *Radecki*] of Rule 68 is markedly more lenient

toward defendants than are Ninth Circuit precedents."); *Barbour v. City of White Plains*, 700 F.3d 631, 633–34 (2d Cir. 2012) (affirming district court's grant of attorneys' fees and costs where defendants' offer of judgment "for the settlement of all claims pending against the defendants in this action" was clearly silent as to attorneys' fees and costs); *Lima v. Newark Police Dep't*, 658 F.3d 324, 331–32 (3d Cir. 2011) (rejecting argument that reference to "all of Plaintiff's claims for relief" in a Rule 68 offer explicitly covered attorneys' fees and costs); *Bosley v. Mineral Cty. Comm'n*, 650 F.3d 408, 411–13 (4th Cir. 2011) (rejecting argument that defendants' offer of judgment for "full and complete satisfaction of [plaintiff's] claim against . . . Defendants" included attorneys' fees and costs).

However, the Ninth Circuit has indicated that extrinsic evidence may sometimes be considered in resolving Rule 68 contract disputes. *See Nusom*, 122 F.3d at 834–35. But, even assuming the Court should or could look at extrinsic evidence here—*i.e.*, the parties' confidential settlement communications offered by Arvest—the evidence presented would not change the fact that Arvest is the master of its own offer and did not explicitly state, in its written offer, that attorneys' fees or costs were included. Arvest apparently asserts that Plaintiff should have known that its offer included attorneys' fees and costs based on their communications in earlier settlement discussions that took place shortly before Arvest made the offer. Doc. No. 145 at 15–16. However, as the *Gutierrez* court points out, Plaintiff should be able to rely on the actual offer given to him, which here, does not explicitly state that attorneys' fees or costs were included in the offer. 2016 WL 5661869, at \*5–7. Indeed, the Ninth Circuit has suggested that defense counsel must take care to draft their offers to explicitly address fees and costs to "avoid exposure to attorney fees in addition to the sum offered plus costs." *Nusom*, 122 F.3d at 834.

The Court also notes that the case law it found while researching this issue was available to Arvest at the time it was drafting its Rule 68 offer of judgment. Thus, the Court is unpersuaded that Arvest should not be held to the actual offer it

presented to Plaintiff.  To the extent that Arvest moves for a relief from judgment pursuant to Rule 60(b) based on its argument that the "[j]udgment should be vacated and the case should be litigated on its merits" due to no "meeting of the minds," the Court **DENIES** any such motion.  "[T]he proper procedural device for relief from a Rule 68 judgment is the same as for any other judgment: Rule 60." *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998).  Rule 60 permits the court "to relieve a party or its legal representative from a final judgment" for a variety of reasons, including "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1). Here, although Arvest attempts to label its contention as a mistake of fact, it appears to the Court that Arvest's entire argument is premised on a mistake of law regarding the availability of attorneys' fees, which is not a basis for granting relief under Rule 60(b).  *See Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103–04 (9th Cir. 2006) (holding that counsel's alleged gross negligence does not provide grounds to vacate a Rule 68 judgment under Rule 60 and noting that "the very purpose of Rule 68 is to encourage termination of litigation").

Accordingly, the Court finds that Arvest's Rule 68 offer of judgment did not state that attorneys' fees or costs were included and that, therefore, Plaintiff is entitled to an award of attorneys' fees as the prevailing party pursuant to the FCRA and CCRAA, and to costs pursuant to Federal Rule of Civil Procedure 68.  *See Marek*, 473 U.S. at 6; *Nusom*, 122 F.3d at 833–34.

**B.     Calculation of Reasonable Attorneys' Fees and Costs**

As stated above, Plaintiff is seeking a total of $121,574.50 in attorneys' fees and $12,191.13 in costs.  Doc. No. 152 at 14.  Having determined that Plaintiff may seek fees and costs, the Court now turns to the question of whether the requested amount in this case is reasonable.

///

1.     Fees

a.     Reasonableness of Rates

In determining whether the amount of fees requested in this case is reasonable, the Court must first determine whether Plaintiff's attorneys' rates are reasonable.  To do so, the Court must weigh the "experience, skill, and reputation of the attorney[s] requesting fees," and compare the requested rates to prevailing market rates.  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984).  The relevant community for analyzing reasonable hourly rates "is the forum in which the district court sits," here the Southern District of California.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

In this action, Plaintiff's counsel requested hourly rates ranging from $295 to $795.  Doc. No. 143-1 at 20.  Plaintiff argues these fee rates are reasonable given the contentious nature of the litigation and the extensive experience of Plaintiff's counsel with FCRA and CCRAA claims.  *Id.* at 21.  In support of these rates, Plaintiff submits numerous declarations from other attorneys and also contends that the requested rates are in line with the prevailing rates in the Southern District of California, relying on *Orthopaedic Hosp. v. Encore Med., L.P.*, No. 19-cv-00970-JLS-AHG, 2021 U.S. Dist. LEXIS 225014 (S.D. Cal. Nov. 19, 2021).  Arvest argues that Plaintiff's reliance on the *Orthopaedic* case is "disingenuous" and that the requested rates are unreasonably high based on the most recent U.S. Consumer Law Attorney Fee Survey Report from 2017 to 2018, which indicates median rates of $400 for attorneys practicing in credit rights cases.  Doc. Nos. 145 at 24; 145-15 at 9.

First, the Court agrees with Arvest that the *Orthopaedic* case is inapposite here.  That case dealt with a "complex, high-stakes patent litigation" which the Court held justified "the approval of higher billing rates."  2021 U.S. Dist. LEXIS 225015, at *43.  Based on a review of the case law in this area, the Court finds another November 2021 case from this District much more instructive than *Orthopaedic*.  In *Buchannon v.*

*Associated Credit Services, Inc.*, No. 20-cv-02245-BEN-LL, 2021 WL 5360971 (S.D. Cal. Nov. 17, 2021), U.S. District Judge Roger T. Benitez found an hourly rate of $575 was reasonable for attorney Michael Cardoza, owner of the Cardoza Law Corporation, who submitted a declaration in support of the instant motion. 2021 WL 5360971, at *15. Like Plaintiff's counsel here, Mr. Cardoza is a consumer law attorney who frequently litigates FCRA cases and cases involving other consumer protection statutes. *Id.*; *see also* Doc. No. 143-46 at 2–4. Mr. Cardoza also has a commensurate practice and litigation experience compared to the three more experienced attorneys in this case.

Second, the Court agrees with Arvest that the twenty attorney declarations submitted by Plaintiff are not persuasive. The declarations are conclusory and do not include sufficient detail—*e.g.*, what the attorneys' own rates currently are, whether they have been awarded $795 as an hourly rate in this District, or whether they practice in this District, specifically—to assist the Court in determining whether counsel's requested rates in the instant case are reasonable.

Moreover, although the Fee Survey Report is quite often relied on by other judges in this District,[8] the Court finds Arvest's suggested rate of $400 based on the report unreasonably low, particularly in light of inflation. *See Bell v. Clackamas Cty.*, 341 F.3d 858, 869 (9th Cir. 2003) ("We hold, however that it was an abuse of discretion in this case to apply the market rates in effect [more] than two years *before* the work was performed." (emphasis in original)). Thus, based on the above reasoning, the Court will calculate counsel's hourly fee in this case using the $575 hourly rate that Judge Benitez found reasonable in the *Buchannon* case. Adjusting for inflation rates of 6.5% and 3.2%[9]

---

[8] For example, this report was cited to recently in October 2023 by U.S. Magistrate Judge Allison H. Goddard when calculating reasonable attorneys' fees. *See Roland S. v. Kijakazi*, No. 20-cv-01068-AHG, 2023 WL 6966153, at *3 (S.D. Cal. Oct. 20, 2023).

[9] The Court takes judicial notice of these rates, *see* Fed. R. Evid. 201(c)(1), which are public records published by the United States Bureau of Labor Statistics, and are calculated as the total Consumer Price Index ("CPI") for each year. *See* https://www.bls.gov/news.release/archives/cpi_01122023.htm (showing unadjusted CPI percentage change of 6.5% for 2022);

in 2022 and 2023, respectively, the Court finds that $650 is a reasonable hourly rate for Mr. Loker, Mr. Swigart, and Mr. Shay.[10]  As to the associate in this case, Mr. Pfeiff, the Court finds that his requested fee of $295 is reasonable based on the Fee Survey Report submitted by Arvest and the above-mentioned inflation rates.[11]

Having determined the reasonable hourly rates, the Court will now determine the reasonableness of the hours expended by counsel to litigate this case.

> b.  Reasonableness of Hours Expended

Here, as modified in their supplemental joint time sheet, Plaintiff's attorneys seek compensation for the following hours billed: (1) 89.2 hours for Mr. Loker; (2) 40.2 hours for Mr. Swigart; (3) 12.8 hours for Mr. Shay; and (4) 28.9 hours for Mr. Pfeiff.  Doc. No. 152-2 at 14.  To determine the appropriate lodestar amount, the Court must now assess the "number of hours reasonably expended on the litigation[.]"  *Credit Managers Ass's of S. Cal. v. Kennesaw Life and Accident Ins. Co.*, 25 F.3d 743, 750 (9th Cir. 1994).  "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary."  *Welch v.*

---

https://www.bls.gov/news.release/archives/cpi_11142023.htm (showing the unadjusted annual percentage change of the CPI of 3.2% for October 2023); *see also* https://www.usinflationcalculator.com/inflation/current-inflation-rates/.

[10] This rate was calculated by dividing the inflation rates by 100, multiplying that number by the relevant hourly rate, and then adding the annual increase based on inflation to the hourly rate.  Although the actual calculation for the new hourly rate came to approximately $631.89, the Court in its discretion finds $650 reasonable based on Plaintiff's counsel's experience and expertise in FCRA and CCRAA cases.

[11] In its opposition, Arvest disputes Mr. Pfeiff's hourly rate and notes that in Plaintiff's original joint time sheet submitted with his motion for fees, Mr. Pfeiff was billing on this case at the same rate before he was admitted to the California State Bar.  Doc. No. 145 at 24.  In reply, Plaintiff acknowledges the error and notes that "the intent was to seek compensation for [Mr. Pfeiff's] time at a lower rate for when he was a law clerk."  Doc. Nos. 152 at 13 n.4; 152-1 ¶ 10.  In light of this error, Plaintiff submitted an updated time sheet that does not seek recovery for any of Mr. Pfeiff's time spent working on this case before he was barred.  Doc. No. 152-1 ¶ 11.  Accordingly, the Court will only apply Mr. Pfeiff's reasonable hourly rate of $295 to *reasonable* hours billed while he was a practicing attorney, with his reasonable hours being determined below.

*Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (internal quotation marks omitted).

In opposition, Arvest disputes Plaintiff's attorneys' claimed hours for various reasons, including excessive hours spent litigating a case Arvest believes was a "frivolous and bad faith action,"[12] "fail[ing] to properly identify and segregate its billing as to Arvest only," duplicative billing, block billing, the wrong attorney billing for a deposition where he was not present, and improperly seeking fees for non-recoverable clerical work. Doc. No. 145 at 18–21. In reply, Plaintiff notes that his supplemental joint time sheet corrects some of the errors that Arvest identified, such as Mr. Pfeiff conducting the deposition of David Roth and not Mr. Swigart. Doc. Nos. 152 at 13 n.4; 152-2 at 10. Plaintiff also notes that his supplemental joint time sheet accounts for time spent defending his fee motion. Doc. No. 152 at 13 n.4.

As an initial matter, the Court will not second guess the litigation tactics used by Plaintiff, because as noted above, he is to be considered the prevailing party for purposes of this motion. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008); Doc. No. 141. Accordingly, the Court will treat all motion practice conducted by both parties in this matter as reasonably necessary.

As to Arvest's complaints of duplicative billing and block billing, the Court is unpersuaded. First, although Plaintiff's attorneys' time sheet includes entries for the same task by different counsel, they specifically billed the time to just one attorney. *See, e.g.*, Doc. No. 152-2 at 11. To the extent Plaintiff argues that it was unnecessary for the more senior attorneys to review the younger associate's work, the Court finds that Arvest has failed to show how Plaintiff's attorneys' decision to staff multiple attorneys on certain tasks resulted in *unnecessary* duplicative billing. *See Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not

---

[12] Arvest also argues at multiple times in its opposition that Plaintiff "manufactured" discovery disputes. Doc. No. 145 at 12, 27, 29.

necessarily constitute an unnecessary duplication of effort."); *Mitchell v. Metro. Life Ins. Co.*, 2008 WL 1749473, at *3 (C.D. Cal. Apr. 7, 2008) ("It is not unusual for one attorney to draft a brief, for another attorney to review and revise the brief, and then for the drafting attorney to make final edits and changes."); *Charlebois v. Angels Baseball, LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. May 30, 2012) (declining to strike billing entries "simply because Class Counsel kept each other informed about the case and double-checked each other's work . . . indeed, many motions this Court denie[d] would have benefitted from a second read and more strategizing by the attorneys involved."). Therefore, the Court does not find duplicative billing as a basis to disallow certain billing entries from a fee award.  Second, in regard to block billing, the Court finds that Arvest's objections to specific entries in Plaintiff's time sheet are without merit.  Doc. No. 145-7 ¶ 46.  Block billing is not prima facie objectionable.  *Garcia v. Ford Motor Co.*, No. 22-CV-1474-GPC, 2023 WL 3961090, at *3 (S.D. Cal. June 12, 2023).  Instead, block billing is first and foremost objectionable when billing records block bill multiple tasks in which only some are entitled to fee recovery.  *See Bell v. Vista Unified School Dist.*, 82 Cal. App. 4th 672, 689 (Cal. App. 2000) (objecting to block billing because the court could not break down the hours to determine which were related to Brown Act violations and therefore recoverable and other legal claims that were not recoverable).  Here, all of the tasks relate to Plaintiff's FCRA and CCRAA claims, and fees are recoverable under these statutory schemes.  Further, none of the entries complained about by Arvest exceeded even three hours of billable time—this is not an egregious use of block billing.  Thus, the Court finds that block billing is not objectionable in this context.

On the other hand, the Court is persuaded by Arvest's arguments regarding Plaintiff's failure to properly identify and segregate its billing as to Arvest only, and as to Plaintiff improperly seeking fees for clerical tasks.  Although the Court agrees with Plaintiff that Arvest is solely responsible for any reasonable time billed after notices of settlement were filed as to the other nine defendants, the Court finds it necessary to discount or disallow Plaintiff's attorneys' time for tasks prior to October 2022, such as

preparing for and attending two ENEs, where multiple other defendants were involved. *See Clark v. Cap. Credit & Collection Servs., Inc.*, 561 F. Supp. 2d 1213, 1223 (D. Or. 2008) (apportioning attorneys' fees between multiple defendants where the parties were not jointly and severally liable for plaintiff's attorneys' fees). In addition, the Court finds that numerous entries in Plaintiff's joint time sheet—for example, "[r]eceiving [a] message from Chambers re[garding] scheduling, Doc. No. 152-2 at 9—must be disallowed due to improperly seeking fees for non-professional, clerical tasks. *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("'[P]urely clerical or secretarial tasks should not be billed at a paralegal's [or lawyer's] rate, regardless of who performs them . . . [The] dollar value [of such non-legal work] is not enhanced just because a lawyer does it.'") (internal citations omitted); *see also Young v. Geico Indem. Co.*, No. 08–00171 JMS/KSC, 2009 WL 3049640, at *8 (D. Haw. Sept. 23, 2009) (communications with the court are clerical and not compensable at attorney rates); *Compass Bank v. Morris Cerullo World Evangelism*, No. 13:CV-0654-BAS (WVG), 2015 WL 3442030, at *8 (S.D. Cal. May 28, 2015) (reducing billing entries due to a finding that "certain tasks were ministerial and did not require an attorney to perform[,]" including drafting a revised subpoena, preparing instructions for service, and phone calls and emails to reschedule deposition); *Miller v. Schmitz*, No. 112CV00137LJOSAB, 2017 WL 633892, at *7 (E.D. Cal. Feb. 15, 2017) (excluding numerous email communications as purely clerical and noting that "[a]lthough Plaintiff's counsel is a solo practitioner and may not have secretarial support for these types of tasks, there is nothing in the record to establish clerical tasks are not generally subsumed within an attorney's hourly rate").

Moreover, as seen in the chart below, the Court also finds some entries in the billing sheet are vague or include excessive hours. *See Santiago v. Equable Ascent Fin.*, No. C 11-3158 CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) (explaining that "[w]ork entries are inadequately vague when the district court is unable to discern how the time spent is attributable to the case at hand" and deducting billed hours with vague entries); *see also Welch*, 480 F.3d at 946.

Finally, as to Plaintiff's additional time sought to defend the instant motion, the Court finds that Plaintiff may also seek the additional fees and costs he incurred in litigating his fees and costs. *See Orange Blossom Ltd. P'ship v. S. Cal. Sunbelt Developers, Inc. (In re S. Cal. Sunbelt Developers, Inc.)*, 608 F.3d 456, 463 (9th Cir. 2010).

Based on the above reasoning and its line-by-line review of Plaintiff's supplemental joint time sheet, Doc. No. 152-2, the Court finds that the following reductions are warranted for the reason(s) shown:

| Billing Date | Task | Time Claimed | Court Adjusted Time | Reason(s) for Adjustment |
|---|---|---|---|---|
| 3/12/2022 | Finalized Complaint. | 0.4 | 0.2 | Excessive hours for task |
| 3/14/2022 | Received approval for Complaint. | 0.1 | 0 | Clerical |
| 3/14/2022 | Filed Complaint. | 0.1 | 0 | Clerical |
| 4/1/2022 | Received executed JPA and added my signature. | 0.1 | 0 | Clerical |
| 4/1/2022 | Prepared NOA. | 0.2 | 0.1 | Excessive hours for task |
| 4/1/2022 | Filed NOA. | 0.1 | 0 | Clerical |
| 4/1/2022 | Provided Zoho link to Spencer so Swigart Law Group could upload the remainder of their documents to my system. | 0.1 | 0 | Clerical |
| 5/6/2022 | Sent research notes to co counsel. Asked Spencer to discuss with Lardizabal. | 0.1 | 0 | Excessive hours for task; clerical |

| Date | Description | Hours | Reduced | Notes |
|---|---|---|---|---|
| 5/6/2022 | Drafted ENE brief. | 3.2 | 0.3 | Hours reduced to account for multiple defendants |
| 5/11/2022 | Provided Zoom link to Lardizabal. | 0.1 | 0 | Clerical |
| 5/13/2022 | Received message from Magdalena seeking dismissal inclusive of docs. | 0.1 | 0 | Clerical |
| 5/16/2022 | Attended ENE. Need more info to facilitate substantive discussions. | 1.0 | 0.1 | Hours reduced to account for multiple defendants |
| 5/16/2022 | Received email from Magdalena re Rule 11. | 0.1 | 0 | Clerical |
| 7/3/2022 | Worked on ENE Brief #2. | 0.8 | 0.1 | Hours reduced to account for multiple defendants |
| 7/20/2022 | Drafted FAC. | 1.2 | 0.2 | Hours reduced to account for multiple defendants |
| 7/28/2022 | Finalized ENE Brief #2. | 1.3 | 0.2 | Hours reduced to account for multiple defendants |
| 8/5/2022 | Received counter from Arvest along with documents/recordings. | 0.1 | 0 | Clerical |
| 8/12/2022 | Attended second ENE. | 3.0 | 0.4 | Hours reduced to account for multiple defendants |

| 9/9/2022 | Received Arvest's discovery requests. | 0.1 | 0 | Clerical |
|---|---|---|---|---|
| 10/10/2022 | Received message from Magdalena re resolution. | 0.1 | 0 | Clerical |
| 11/2/2022 | Finalized and filed disco dispute Motion. | 2.6 | 2.0 | Excessive hours for task; clerical |
| 11/22/2022 | Received Order re Disco Dispute. | 0.1 | 0 | Clerical |
| 12/19/2022 | Received unilateral "cancellation" of depos by Magdalena. | 0.1 | 0 | Clerical |
| 12/21/2022 | Organized Exhibits for Johnson and Bisbee no show. | 0.6 | 0.3 | Excessive hours for task; clerical |
| 12/21/2022 | Submitted No Show Exhibits to Steno. | 0.1 | 0 | Clerical |
| 12/28/2022 | Received expert designations from Arvest. | 0.1 | 0 | Clerical |
| 1/9/2023 | Provided final costs re No Show Depos to Magdalena. | 0.1 | 0 | Clerical |
| 1/11/2023 | Received message from Magdalena that Arvest will reimburse costs but will not produce either Bisbee or Johnson for a depo. | 0.1 | 0 | Clerical |
| 1/13/2023 | Received message from Chambers re scheduling disco dispute conference call. | 0.1 | 0 | Clerical |
| 1/13/2023 | Confirmed disco dispute call for 1.18. | 0.1 | 0 | Clerical |

| 1/20/2023 | Finalized and filed Disco Dispute #2. | 2.8 | 1.4 | Vague; excessive hours for task; partially clerical |
|---|---|---|---|---|
| 2/24/2023 | Received Order re MTC #2. | 0.7 | 0 | Vague; excessive hours for task; clerical |
| 2/27/2023 | Drafted and submitted MSC Brief. | 2.8 | 2.0 | Excessive hours for task |
| 3/9/2023 | Received Rule 68 Offer of Judgment. | 0.1 | 0 | Clerical |
| 3/13/2023 | Prepared and filed notice of acceptance of OOJ. | 0.3 | 0.1 | Excessive hours for task; partially clerical |
| 3/14/2023 | Judgement entered. | 0.4 | 0 | Vague; excessive hours for task; clerical |

Taking into account the reduction of hours detailed above, the Court will allow the recovery of 82.4 hours worked by Mr. Loker, 34.6 hours worked by Mr. Swigart, and 12.8 hours worked by Mr. Shay at the hourly rate of $650, and 25.3 hours worked by Mr. Pfeiff at the hourly rate of $295.  The Court finds that these hourly rates provide adequate and reasonable compensation, and a review of the *Kerr* factors does not support a lodestar multiplier or reduction.

However, "the district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno*, 534 F.3d at 1112.  "This reduction is in addition to the line-item reductions explained above." *Salmeron v. Ford Motor Co.*, No. 218CV07266SVWPLA, 2020 WL 9217979, at *8 (C.D. Cal. July 14, 2020).  Having closely examined the record, and in consideration of the Court's experience with similar cases, the Court finds that several inefficiencies are not accounted for in the above reductions.  Accordingly, the Court imposes an additional 10 percent "haircut" to its modified lodestar figure.

///

In sum, the Court will award Plaintiff $82,650.15 in attorneys' fees.  That figure was arrived at under the following calculations:

| Attorney | Reasonable Rate | Reasonable Hours | Fee |
|---|---|---|---|
| Matthew Loker | $650 | 89.2 – 6.8 = 82.4 | $53,560 |
| Joshua Swigart | $650 | 40.2 – 5.6 = 34.6 | $22,490 |
| Daniel Shay | $650 | 12.8 – 0 = 12.8 | $8,320 |
| Spencer Pfeiff | $295 | 28.9 – 3.6 = 25.3 | $7,463.50 |
| **Subtotal** | --- | --- | **$91,833.50** |
| **"Haircut Reduction"** | --- | --- | **$9,183.35** |
| **Total** | --- | --- | **$82,650.15** |

   2.   *Costs*

   Plaintiff also requests a total of $12,191.13 in costs and expenses.  Doc. No. 143-1 at 29.  Arvest does not dispute that Plaintiff's counsel is owed costs and expenses, but argues that the $402 filing fee sought in the Bill of Costs should not be solely apportioned to Arvest due to there being nine other defendants at the start of this case.  Doc. No. 145 at 31–32.  Plaintiff does not address this argument in his reply.  On this point, the Court agrees with Arvest.  Therefore, the Court will only apportion one-tenth of the filing fee to Arvest, which is $40.20.  Arvest also challenges $7,246.90 in litigation costs sought by the Swigart Law Group.  *Id.* at 32.  However, the Court finds there is no material dispute regarding these expenses sought by Plaintiff.  The Court entered judgment in favor of Plaintiff, *see* Doc. Nos. 140–141, and additionally, the FCRA and CCRAA entitle a successful party to recover costs. *See* 15 U.S.C. §§ 1681n, 1681o; Cal. Civ. Code § 1785.31(d).  The Court has reviewed the challenged expenses and Plaintiff's receipts— which include service fees, depositions fees, transcript fees, and video fees related solely to Arvest—and finds these costs recoverable.  *See* 28 U.S.C. § 1920; *see also* CivLR 54.1.  Accordingly, the Court awards $11,829.33 in costs to Plaintiff.

///

# IV. CONCLUSION

For the reasons above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion for Attorneys' Fees and Costs.  Doc. No. 143.  Accordingly, the Court finds Plaintiff's attorneys are entitled to $82,650.15 in attorneys' fees and $11,829.33 in costs.

**IT IS SO ORDERED**.

Dated:  November 29, 2023

HON. MICHAEL M. ANELLO
United States District Judge